1 | Robert D. Hoffman - State Bar No. 123458
**CHARLSTON, REVICH & WOLLITZ LLP**
2 | 1925 Century Park East, Suite 1250
Los Angeles, California 90067-2746
3 | Tel: (310) 551-7016 • Fax: (310) 203-9321
E-mail: rhoffman@crwllp.com
4 |
5 | Attorneys for Plaintiff,
Carolina Casualty Insurance Company
6 |
7 |

```
                    FILED
          CLERK, U.S. DISTRICT COURT

            AUG 16 2010
              3:39

     CENTRAL DISTRICT OF CALIFORNIA
     BY                        DEPUTY
```

8 |

# UNITED STATES DISTRICT COURT

9 |

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 |

11 | CAROLINA CASUALTY
INSURANCE COMPANY, an Iowa
12 | Corporation,
13 |           Plaintiff,
14 |      v.
15 | RPOST INTERNATIONAL
LIMITED, a Bermuda Corporation;
16 | RPOST, INC., aka AVION
MICROSERVICES, INC., a Nevada
17 | Corporation; ZAFAR KHAN, a
California resident; TERRANCE
18 | TOMKOW, a California resident;
HENRI ISENBERG, a California
19 | resident; CAROLE KRECHMAN, a
California resident; JAMES
20 | WATLINGTON, a Bermuda resident;
CHARLES BREED, a California
21 | resident; ELLSWORTH ROSTON, a
California resident; KENNETH
22 | BARTON, a California resident;
SYMANTEC CORPORATION, a
23 | Delaware Corporation,
24 |           Defendants.

Case **CV10 6095**-DDP (SHX)

**COMPLAINT OF CAROLINA CASUALTY INSURANCE COMPANY FOR DECLARATORY RELIEF AND FOR REIMBURSEMENT OF DEFENSE PAYMENTS PURSUANT TO MANAGEMENT LIABILITY INSURANCE POLICY**

25 |
26 |
27 |
28 |

I.   **INTRODUCTION**

1.     For its complaint, Carolina Casualty Insurance Company ("CCIC") seeks a judicial determination that it has no duty to defend or indemnify, the claims in the actions *Kenneth Barton v. RPost International Limited, et al.*, Los Angeles County Superior Court Case No. YC 051 312 ("Barton Action I"), *Kenneth Barton v. RPost International Limited*, Los Angeles County Superior Court Case No. YC 053 346 ("Barton Action II") and *Kenneth Barton v. RPost International et al.,* Los Angeles County Superior Court Case No. YC061581 ("Barton Action III") (Barton Actions I and II are referred to as the "Consolidated Actions" and the Consolidated Actions and Barton Action III are collectively referred to as the "Barton Actions") pursuant to the management liability insurance policies issued by CCIC to RPost International Limited ("RIL") for the policy periods  June 12, 2004 to June 13, 2005 ("2004 Policy") and June 12, 2005 to June 13, 2006 ("2005 Policy") (collectively "CCIC Policies").

2.     CCIC has defended, and continues to defend, the Barton Actions under a reservation of rights, including but not limited to the right to disclaim coverage for the claims in the Barton Actions on the grounds, inter alia, that no potential coverage exists for the Barton Actions because RIL failed to timely report to CCIC the claim upon which those suits are based in violation of the claims made and reported provisions of the CCIC Policies, that are a condition precedent to coverage, and the right to seek reimbursement of all payments pursuant to the 2005 Policy relating to the Barton Actions.

3.     On or about August 2, 2010, the Consolidated Actions were dismissed with prejudice pursuant to a settlement funded by RIL ("Settlement Payment") for which no indemnity coverage exists under the CCIC Policies.  CCIC is presently defending Barton Action III pursuant to a reservation of rights, including but not limited to, the right to disclaim coverage for that action on the grounds that

1  pursuant to the related claims provision of the CCIC Policies, that suit involves

2  claims based upon or arising out of alleged related wrongful acts that are the subject

3  of the claims in the Consolidated Actions that were not timely reported to CCIC so

4  as preclude any potential coverage under the CCIC Policies for Barton Action III.

5      4.    The Barton Actions pertain to certain claims asserted by former RIL

6  officer and director Kenneth Barton ("Barton" or "plaintiff") against RIL and

7  certain present and former directors of RIL relating to his status as a shareholder of

8  RIL and certain alleged unpaid compensation claimed to have been owed to him.

9      5.    In Barton Action I filed in July 2005, Barton sought to recover for

10  RIL's alleged violations of California Labor Code §§ 201 et seq. for certain alleged

11  unpaid salary, expenses and wages with respect to his employment with RIL

12  (collectively "Wage Claims").

13      6.    In Barton Action II filed in June 2006, Barton alleged that he was

14  entitled to be provided with certain stock certificates totaling 6,016,500 shares of

15  RIL stock ("Barton Shares") that Barton contends that he still owns and that have

16  allegedly been wrongfully withheld from him ("Barton Share Claims").  Barton

17  claimed that he was entitled to the Barton Shares pursuant to, among other things,

18  the 2004 RIL Investor's Rights Agreement and the May 2004 RIL Right of First

19  Refusal and Co-Sale Agreement (collectively "RIL Agreements").

20      7.    In Barton Action III filed in January 2010, Barton alleged that he is

21  entitled to the same Barton Shares that were the subject of the Barton Share Claims

22  and alleged, among other things, certain wrongdoing by RIL and other defendants

23  relating to their denial of his status as an RIL shareholder, including certain alleged

24  wrongful conduct allegedly discovered during the litigation of the Consolidated

25  Actions.

26      8.    CCIC seeks a declaration that no potential coverage exists under the

27  CCIC Policies for the entirety of the claims in the Barton Actions because in 2004

28  RIL received demand letters from counsel for Barton dated September 20, 2004,

1    October 29, 2004 and November 18, 2004 ("Demand Letters") for monetary and

2    non-monetary relief that are the subject of the Wage Claims and the Barton Share

3    Claims.  The Demand Letters constituted a claim under the 2004 Policy that had to

4    be reported in writing to CCIC within 90 days pursuant to the claims made and

5    reported provisions of the 2004 Policy with respect to claims that are not suits, as a

6    condition precedent to coverage under that policy.  It was not until 8 months later,

7    on July 22, 2005, when the 2005 Policy was in effect, that RIL first provided

8    written notice to CCIC of any claim relating to Barton with respect to the tender of

9    the complaint in Barton Action I.

10           9.      Pursuant to the related claims provisions of the CCIC Policies, the

11   claims that are the subject of the Demand Letters and the Barton Actions, are

12   deemed to constitute a single claim first made at the time of the Demand Letters.

13   Because such claim was not timely reported to CCIC, as required as a condition

14   precedent to coverage, CCIC requests a declaration that no potential for coverage

15   exists for the Barton Actions under any of the CCIC Policies such that CCIC has no

16   duty to defend and/or indemnify the Barton Actions.  No potential or actual

17   coverage exists for that claim under the 2004 Policy because of RIL's failure to

18   have timely reported that claim to CCIC, nor with respect to the 2005 Policy

19   because such claim was not first made during the policy period of that policy as

20   required by the insuring agreement of the 2005 Policy.

21           10.     In the alternative, CCIC seeks a declaration with respect to Barton

22   Action II, that the original complaint in that Action was not timely reported to

23   CCIC within 15 days of when that suit was served as required by the claims made

24   and reported provisions of the 2005 Policy pertaining to suits.  CCIC is informed

25   and believes and thereon alleges that on July 20, 2006, counsel for Barton filed a

26   return of service of summons with respect to the service of the original complaint

27   on RIL in Barton Action II but that RIL self defended that action for more than 3

28   months and that it was not until on or about October 23, 2006, after the expiration

1    of the 2005 Policy that written notice of Barton Action II was first provided to

2    CCIC.

3        11.    On November 8, 2006, CCIC agreed to defend Barton Action II under

4    a full and complete reservation of rights and reserved all rights to disclaim coverage

5    for the claims in that action, and to seek reimbursement of defense fees and costs

6    paid pursuant to the 2005 Policy.

7        12.    Because of RIL's failure to have timely reported Barton Action II to

8    CCIC in violation of the claims made and reported provisions of the 2005 Policy,

9    CCIC seeks an order that no potential coverage exists under the CCIC Policies for

10    that action and that CCIC has no duty to defend or indemnify any claims in that

11    action.

12        13.    In connection with its claims in this action that no potential coverage

13    exists under the CCIC Policies for the Barton Actions such that CCIC never had a

14    duty to defend or indemnify those actions, CCIC also seeks an order that CCIC is

15    entitled to reimbursement from the RIL Parties for legal fees and costs incurred

16    pursuant to the 2005 Policy for the defense of the Barton Actions. As of July 1,

17    2010, CCIC had incurred $497,764.84 for legal fees and costs with respect to the

18    defense of the Barton Actions, and CCIC seeks to recover that amount, along with

19    all amounts incurred since July 1, 2010 relating to the defense of the Barton

20    Actions.

21        14.    Alternatively, CCIC seeks a declaration that no indemnity coverage

22    exists under the CCIC Policies for the Settlement Payment with respect to the

23    settlement of the Consolidated Actions. Prior to that settlement, the Barton Share

24    Claims had been dismissed in their entirety by way of a motion for judgment by

25    RIL at trial and the Wage Claims do not involve covered "Loss" under the CCIC

26    Policies ("Loss" is defined in those policies as not including amounts owed under

27    federal, state or local wage and hour laws), and/or the Wage Claims come within

28    the scope of the Wage and Hour and/or Contract Exclusions of the CCIC Policies

1 | and/or constitutes a voluntary payment such that no indemnity coverage exists for
2 | such claims.

3

4 | II.   **THE PARTIES**

5

6 | 15.   At all times herein mentioned, CCIC was and is, a corporation
7 | organized and existing under the laws of the State of Iowa, with its principal place
8 | of business located at 4600 Touchton Road East, Building 100, Suite 400,
9 | Jacksonville, Florida, and a citizen of the States of Iowa and Florida.

10 | 16.   CCIC is informed and believes, and thereon alleges, that at all times
11 | herein relevant, RIL was and is, a corporation organized and existing under the laws
12 | of the Nation of Bermuda with its principal place of business in Los Angeles,
13 | California, and a citizen of the Nation of Bermuda and the State of California.

14 | 17.   CCIC is informed and believes, and thereon alleges, that at all times
15 | herein relevant, RPost, Inc. aka Avion Microservices, Inc. ("RPost"), a defendant in
16 | Barton Action III, was and is, a corporation organized and existing under the laws
17 | of the State of Nevada with its principal place of business in Los Angeles,
18 | California, and a citizen of the States of Nevada and California.

19 | 18.   CCIC is informed and believes, and thereon alleges, that at all times
20 | herein relevant, Symantec Corporation ("Symantec"), a defendant in Barton Action
21 | III, was and is, a corporation organized and existing under the laws of the State of
22 | Delaware with its principal place of business in Mountain View, California, and a
23 | citizen of the States of Delaware and California.

24 | 19.   CCIC is informed and believes, and thereon alleges, that at all times
25 | herein relevant, Barton was and is a resident domiciled in the State of California
26 | and a citizen of the State of California.

27 | 20.   CCIC is informed and believes, and thereon alleges, that at all times
28 | herein relevant, Zafar Khan ("Khan"), a defendant in Barton Action III, was and is

00027072.DOCX 1}

Complaint for Declaratory Relief and Reimbursement of Defense Payments

1  a resident domiciled in the State of California and a citizen of the State of
2  California.

3      21.   CCIC is informed and believes, and thereon alleges, that at all times
4  herein relevant, Terrance Tomkow ("Tomkow"), a defendant in Barton Action III,
5  was and is a resident domiciled in the State of California and a citizen of the State
6  of California.

7      22.   CCIC is informed and believes, and thereon alleges, that at all times
8  herein relevant, Henri Isenberg ("Isenberg"), a defendant in Barton Action III, was
9  and is a resident domiciled in the State of California and a citizen of the State of
10 California.

11     23.   CCIC is informed and believes, and thereon alleges, that at all times
12 herein relevant, Carole Krechman ("Krechman"), a defendant in Barton Action III,
13 was and is a resident domiciled in the State of California and a citizen of the State
14 of California.

15     24.   CCIC is informed and believes, and thereon alleges, that at all times
16 herein relevant, James Watlington ("Watlington"), a defendant in Barton Action III,
17 was and is a resident domiciled in the Nation of Bermuda and a citizen of the
18 Nation of Bermuda.

19     25.   CCIC is informed and believes, and thereon alleges, that at all times
20 herein relevant, Charles Breed ("Breed"), a defendant in Barton Action III, was and
21 is a resident domiciled in the State of California and a citizen of the State of
22 California.

23     26.   CCIC is informed and believes, and thereon alleges, that at all times
24 herein relevant, Ellsworth Roston ("Roston"), a defendant in Barton Action III, was
25 and is a resident domiciled in the State of California and a citizen of the State of
26 California.

27     27.   Barton and Symantec, who do not qualify as insureds under the CCIC
28 Policies, have been named as defendants in this action so as to bind them to any

1  judicial determination herein regarding CCIC's requests for declaratory relief with

2  respect to coverage issues regarding the CCIC Policies. CCIC is amenable to

3  dismissing Barton and Symantec from this action pursuant to a stipulation that they

4  agree to be bound by the judicial determinations made herein.

5

6  **III.  JURISDICTION AND VENUE**

7

8  28.  This Court has jurisdiction over the subject matter of this action

9  pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum

10  of $75,000, exclusive of interest and costs, and is between citizens of different

11  states, in that CCIC is an Iowa corporation with its principal place of business in

12  Florida, and thus a citizen of the states of Iowa and Florida, whereas defendant RIL

13  is a Bermuda corporation with its principal place of business in California, and thus

14  a citizen of the Nation of Bermuda and the State of California; RPost is a Nevada

15  corporation with its principal place of business in California, and thus a citizen of

16  the States of Nevada and California, Symantec is a Delaware corporation with its

17  principal place of business in California, and thus a citizen of the States of

18  Delaware and California; and CCIC is informed and believes that Barton, Khan,

19  Tomkow, Isenberg, Krechman, Breed and Roston are residents and citizens of the

20  State of California and Watlington a resident and citizen of the Nation of Bermuda.

21  As of July 1, 2010, CCIC had incurred $497,764.84 in legal fees and costs pursuant

22  to the 2005 Policy with respect to the defense of the Barton Actions and CCIC

23  seeks to recover that amount in this action, along with all amounts incurred by

24  CCIC since July 1, 2010, such that the applicable amount in controversy is in an

25  amount in excess of the sum of $75,000, exclusive of interest and costs.  The

26  amount in controversy herein also includes the amount of the Settlement Payment

27  in that CCIC seeks a declaration herein that no indemnity coverage exists for that

28  payment pursuant to the CCIC Policies.

29.     Pursuant to 28 U.S.C. §1391(a), venue is appropriate in the Central District of California because jurisdiction is founded upon diversity of citizenship, with the defendants being subject to personal jurisdiction in this district as parties to Barton Action III pending in Los Angeles County Superior Court at the time this action was commenced, and the acts giving rise to the claims for relief asserted herein, including those that are the subject of the Barton Actions, arose in and have been litigated within the Central District of California.

## IV.     FACTUAL BACKGROUND

### 1.     Barton's Affiliation With RIL

30.     CCIC is informed and believes and thereon alleges that in certain pleadings in the Barton Actions, Barton has alleged that in or about 1999, Barton and certain other individuals founded RPost.

31.     CCIC is informed and believes and thereon alleges that in certain pleadings in the Barton Actions, Barton has alleged that in or about 2000, Barton and certain other individuals founded RIL.

32.     CCIC is informed and believes and thereon alleges that in certain pleadings in the Barton Actions, Barton has alleged that in 2000 and 2001 he was issued the Barton Shares.

33.     CCIC is informed and believes and thereon alleges that in certain pleadings in the Barton Actions, Barton has alleged that in 2000 he was employed as an officer of RIL allegedly pursuant to a written employment agreement with RIL.

34.     CCIC is informed and believes and thereon alleges that in certain pleadings in the Barton Actions, Barton has alleged that in September 2003, Barton

1   had a stroke or "brain hemorrhage" that allegedly limited his ability to tend to his
2   duties as an officer of RIL.

3       35.   CCIC is informed and believes and thereon alleges that in certain
4   pleadings in the Barton Actions, Barton has alleged that RIL, Khan and Tomkow
5   allegedly breached certain fiduciary duties owed to him, and allegedly interfered
6   with his rights as an employee and shareholder of RIL.

8   ## 2.   **The Barton Demand Letters**

10      36.   CCIC is informed and believes and thereon alleges that on September
11  20, 2004 ("September 2004 Letter"), counsel for Barton sent a letter to Kahn and
12  Tomkow and RIL, among other entities, wherein it was stated, among other things,
13  that Barton "considers himself to be wrongfully terminated by the management of
14  RPost" that "RPost management has refused to pay Mr. Barton the compensation
15  detailed in Mr. Barton's employment agreement, and further RPost management has
16  hindered Mr. Barton's ability to perform certain obligations as an officer of the
17  Company."

18      37.   CCIC is informed and believes and thereon alleges that the September
19  2004 Letter stated that Barton "has still not been fully reimbursed for expenses
20  submitted and approved over the past four years."

21      38.   CCIC is informed and believes and thereon alleges that the September
22  2004 Letter demanded RIL to provide Barton with his share certificates with
23  respect to the Barton Shares "and his additional equity documentation by no later
24  than September 23, 2005."

25      39.   CCIC is informed and believes and thereon alleges that the September
26  2004 Letter stated that Barton was resigning as an officer of RIL and certain other
27  affiliated or related entities.

28      40.   Attached hereto as Exhibit "A" is a true and correct copy of the

1    September 2004 Letter that RIL received in September 2004.

2        41.    CCIC is informed and believes and thereon alleges that on October 29,

3    2004, counsel for Barton sent a letter to Kahn and Tomkow and RIL, and to certain

4    other entities ("October 2004 Letter"), wherein it was stated that the September

5    2004 Letter had requested information and documentation regarding "unpaid

6    compensation and unreimbursed employee expenses" and that "we also requested

7    that Mr. Barton's stock be delivered without further delay."

8        42.    CCIC is informed and believes and thereon alleges that in the October

9    2004 Letter, counsel for Barton stated that his client "would proceed with

10   appropriate legal action to enforce and protect his rights if the information and

11   documentation requested in the September 2004 Letter was not provided by the

12   close of business on November 5, 2004.

13       43.    Attached hereto as Exhibit "B" is a true and correct copy of the

14   October 2004 Letter that RIL received in October 2004.

15       44.    CCIC is informed and believes and thereon alleges that on November

16   18, 2004, counsel for Barton sent a letter ("November 2004 Letter") to the Board of

17   Directors of RIL ("RIL Board") that forwarded copies of the September 2004 Letter

18   and the October 2004 Letter and that stated that the absence of any response to

19   those letters "certainly constitutes sufficient grounds – given the gravity of the

20   matters at issue – for our client to have already commenced legal action" and that

21   the RIL Board was "urged" to "take these matters seriously" and to reply by the

22   close of business on November 29, 2004.

23       45.    Attached hereto as Exhibit "C" is a true and correct copy, without

24   enclosures, of the November 2004 Letter that RIL received in November 2004.

25       46.    No notice of the September 2004 Letter, the October 2004 Letter and

26   the November 2004 Letter (collectively "Demand Letters") was provided to CCIC

27   within 90 days of when RIL had first received any of those letters.

28

3.   **The Claims In Barton Action I**

47.   On or about July 7, 2005, Barton filed a complaint against RIL, Khan, Tomkow and Isenberg, for breach of fiduciary duty and violation of Labor Code §§201 et seq. in Barton Action I.

48.   In the complaint in Barton Action I, Barton alleged, among other things, that he was entitled to compensatory damages of more than $10 million for the Officer/Director Defendants' failure and refusal to deliver to him stock certificates for the Barton Shares.

49.   CCIC is informed and believes and thereon alleges that the RIL stock certificates for the Barton Shares that were the subject of Barton's claims in the complaint in Barton Action I had also been the subject of the Demand Letters.

50.   In the complaint in Barton Action I, Barton asserted the Wage Claims that alleged in ¶ 19 that he was entitled to certain wages, salary and reimburseable expenses that had not been paid to him by RIL as "required by Labor Code §201, et seq., despite Plaintiff's repeated requests therefor."

51.   CCIC is informed and believes and thereon alleges that the alleged unpaid wages, salary and expenses allegedly owed to Barton that were the subject of the Wage Claims in the complaint in Barton Action I also had been the subject of the Demand Letters.

52.   On July 22, 2005, Barton Action I was first tendered to CCIC in connection with the 2005 Policy.

53.   Prior to July 22, 2005, RIL had not notified CCIC of any claims by Barton against RIL or its officers or directors.

54.   On September 7, 2005, Monitor Liability Managers, Inc., now known as Monitor Liability Managers, LLC, underwriting manager of CCIC with respect to the CCIC Policies, advised RIL that CCIC had agreed to defend Barton Action I pursuant to a full and complete reservation of rights.

55.     On or about April 30, 2008, Barton filed a first amended complaint in Barton Action I that contained causes of action for "(1) Derivative Action Breach of Fiduciary Duty (2) Violation of Labor Code §201 et seq. (3) Declaratory Relief (4) Declaratory Relief (5) Accounting (6) Violations of Business & Professions Code §17200 and (7) Negligence."

### 4.     The Claims In Barton Action II

56.     On or about June 8, 2006, Barton filed a complaint against RIL for "(1) Specific Performance (2) Specific Performance and (3) Damages for Failure to Issue Stock Certificates."

57.     CCIC is informed and believes and thereon alleges that the alleged ownership rights of Barton to the Barton Shares that were the subject of the Barton Share Claims in the complaint in Barton Action II also had been the subject of the Demand Letters.

58.     In the complaint in Barton Action II, it was alleged in ¶ 14 that "[b]eginning in September 2004 and continuing thereafter, Plaintiff requested of RPost's officers and directors that RPost issue and deliver stock certificates representing the number of shares of RPost owned by Plaintiff" and copies of the Demand Letters were attached as an exhibit to that pleading.

59.     On or about September 6, 2006, Barton filed a first amended complaint against RIL in Barton Action II that contained causes of action for "(1) Specific Performance (2) Specific Performance and (3) Damages for Failure to Issue Stock Certificates."

60.     In the first amended complaint in Barton Action II, it was alleged, among other things, that RIL was obligated to provide Barton with the stock certificates for the Barton Shares that are also the subject of the Demand Letters.

## 5.   The Settlement of the Consolidated Actions

61.   CCIC is informed and believes and thereon alleges that on or about March 14, 2007, Barton Action I and Barton Action II were consolidated for all purposes, including trial.

62.   CCIC is informed and believes and thereon alleges that in or about March, 2010, the bench trial ("Trial") of the Consolidated Actions commenced with Barton and RIL as the sole parties to that trial and that defendants Khan, Tomkow and Isenberg had previously been dismissed from Barton Action I.

63.   CCIC is informed and believes and thereon alleges that the Wage Claims and the Barton Share Claims were the sole claims that were the subject of the Trial.

64.   CCIC is informed and believes and thereon alleges that in connection with certain proceedings at the Trial, RIL's motion for judgment as to the Barton Share Claims was granted such that Barton was denied any recovery on those claims.

65.   CCIC is informed and believes and thereon alleges that prior to the conclusion of the Trial, RIL entered into a settlement with Barton that included the Settlement Payment to Barton, and that resulted in the dismissal, on or about August 2, 2010 of the Consolidated Actions in their entirety with prejudice.

## 6.   The Claims in Barton Action III

66.   On or about January 29, 2010, Barton filed a complaint against RIL, RPost, Symantec, Khan, Tomkow, Isenberg, Krechman and Roston for "(1) conversion (2) Derivative Action (Breach of Fiduciary Duty) (3) Declaratory Relief (4) Declaratory Relief (5) Accounting (6) Fraud and (7) Violation of Business & Professions Code §17200."

67.    CCIC is informed and believes and thereon alleges that the RIL stock certificates for the Barton Shares that are the subject of Barton's claims in the complaint in Barton Action III had also been the subject of the Demand Letters.

68.    CCIC is informed and believes and thereon alleges that in the complaint in Barton Action III, it was alleged, among other things, that the Barton Shares had allegedly been converted by RIL through certain officers and directors of RIL and allegedly improperly canceled.

69.    CCIC is informed and believes and thereon alleges that in the complaint in Barton Action III, it was alleged, among other things, that a dispute exists as to whether or not Barton is a shareholder of RIL and entitled to obtain the certificates of the Barton Shares.

70.    CCIC is informed and believes and thereon alleges that on or about February 1, 2010, counsel for Barton served a notice of related actions wherein he requested that Barton Action III be consolidated with the Consolidated Actions for all purposes and stated that all of those actions "involve the same parties (either as witnesses and/or parties)" and that those actions "arise from the same or substantially identical transactions, incidents or events requiring the determination of the same or similar questions of law and/or fact."

71.    On or about June 28, 2010, Barton filed a first amended complaint in Barton Action III that added Watlington and Breed as defendants, and also added claims for breach of fiduciary duty and declaratory relief.

72.    CCIC is informed and believes and thereon alleges that Barton's claim that he is entitled to be provided the RIL stock certificates for the Barton Shares that are the subject of Barton's claims in the first amended complaint in Barton Action III had also been the subject of the Demand Letters.

### 7.   **The CCIC Policies**

73.   CCIC is informed and believes and thereon alleges that at the time that RIL first received the Demand Letters, the 2004 Policy was in effect.

74.   Attached hereto as Exhibit "D" is a true and correct copy of the 2004 Policy. Certain financial information in the proposal form that is a part of that policy has been redacted.

75.   At the time that Barton Action I was first tendered to CCIC in July 2005, the 2005 CCIC Policy was in effect.

76.   Attached hereto as Exhibit "E" is a true and correct copy of the 2005 Policy. Certain financial information in the proposal form that is a part of that policy has been redacted.

77.   In September 2005, CCIC agreed to defend Barton Action I under a full and complete reservation of rights, including but not limited to, the right to seek reimbursement of amounts incurred for that defense for which no potential coverage exists under the 2005 Policy.

78.   In October 2006, RIL first provided written notice to CCIC of the original and first amended complaints in Barton Action II, after the expiration of the 2005 CCIC Policy, and more than 15 days after the original complaint in Barton Action II had been served on RIL.

79.   In November 2006, CCIC agreed to defend Barton Action II under a full and complete reservation of rights, including but not limited to, the right to seek reimbursement of amounts incurred for that defense for which no potential coverage exists under the 2005 Policy.

80.   The CCIC Policies include coverage form ML 26000 10-98 ("ML Form") that contain the following insuring agreements:

## I. INSURING AGREEMENTS

### Coverage A. Directors and Officers Liability Insurance

This Policy shall pay the **Loss** of:

1. each and every **Director or Officer** of the **Insured Entity** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified the **Directors or Officers**.

2. the **Insured Entity** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**, but only to the extent that the **Insured Entity** has indemnified the **Directors or Officers** for such **Loss** as permitted by law.

### Coverage B. Corporate Liability Insurance

This Policy shall pay the **Loss** of the **Insured Entity** arising from any **Claim** first made against the **Insured Entity** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**.

### Coverage C. Employment Practices Liability Insurance

This Policy shall pay the **Loss** of the **Insured(s)** arising from any **Claim** first made against the **Insured(s)** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Employment Act**.

81.   The ML Form of the CCIC Policies contains, in part, the following exclusions:

### IV. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim**   made against any **Insured**:

\*   \*   \*

F.   by, on behalf of, or in the right of the **Insured Entity**, or by any **Directors or Officers**; provided, however, this exclusion does not apply to:

1. any derivative action by any security holder of the **Insured Entity**, but only if such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any **Insured** or the **Insured Entity**, or

2. any **Claim** for a **Wrongful Employment Act**, or

3. any **Claim** by any of the **Directors or Officers** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this Policy;

("Insured Exclusion")

\*   \*   \*

N.   based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any oral or written contract or agreement. This     exclusion shall not apply to Coverage A. or Coverage C., in the event that such liability would have attached to an **Insured** in the absence of the oral or written contract or agreement, or in the event a claimant alleges a breach of implied contract.

("Contract Exclusion")

82.   The Wage and Hour Laws Exclusion endorsement to the CCIC

Policies adds the following exclusion to Section IV. of the ML Form ("Wage and Hour Exclusion"):

> In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:
>
> **IV. EXCLUSIONS**
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured**]:
>
> IV.:      based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged amounts owed under federal, state or local wage and hour laws, including, without limitation, the Fair Labor Standards Act; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law or amounts owed under the Equal Pay Act of 1963.

83.     The ML Form of the CCIC Policies contains, in part, the following provisions with respect to "Notice of Claim and Multiple Claims:"

> **VII. NOTICE OF CLAIM AND MULTIPLE CLAIMS**
> A.     As a condition precedent to their rights under this Policy, an **Insured** shall give the **Insurer** written notice of any **Claim**:
>   1.     in the event of a lawsuit, as soon as practicable, but in no event later than 15 days after such **Claim** is first made, or
>   2.     in the event of all other **Claims**, as soon as practicable, but in no event later than 90 days after such **Claim** is first made.

("Notice Condition")

> B.     If during the **Policy Period** or the Extended Reporting Period (if applicable) the **Insureds** become aware of any fact, circumstance or situation which may reasonably be expected to give rise to a **Claim** being made against any **Insured** and shall give written notice to the **Insurer**, as soon as practicable (but prior to the expiration of or cancellation of the Policy), of:
>   1.     the specific fact, circumstance or situation, with full details as to dates, persons, and entities involved; and
>   2.     the injury or damages which may result therefrom; and
>   3.     the circumstances by which the **Directors or Officers** or the **Insured Entity** first became aware thereof;
>
> then any **Claim** subsequently made arising out of such fact, circumstance or situation shall be deemed to have been made when notice was first given to the **Insurer**.
>
> C.     All **Claims** based upon or arising out of the same **Wrongful Act** or **Wrongful Employment Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Act** or **Wrongful Employment Act** or **Related Wrongful Acts**, shall be considered a single **Claim**. Each **Claim** shall be deemed to be first made at the earliest of the following times:

1.  when the earliest **Claim** arising out of such **Wrongful Act** or **Wrongful Employment Act** or **Related Wrongful Act** is first made, or
2.  when notice pursuant to section VII. B. of a fact, circumstance or situation giving rise to such **Claim** is given.

("Related Claim Provision")

84.     The 2005 Policy contains an endorsement entitled "Modification to Section VII.A. Extended Notice of Claim" that provides as follows:

> In consideration of the premium paid for this Policy, it is understood and agreed that section VII.  Notice of Claims and Multiple Claims A. of this Policy is deleted in its entirety and replaced with the following:
> V.II. A.: As a condition precedent to their rights under this Policy, an **Insured** shall give the **Insurer** written notice of  any **Claim**:
> 1.  in the event of a lawsuit, as soon as practicable, but in no event later than 15 days after such **Claim** is first made, or
> 2.  in the event of all other **Claims**, as soon as practicable, but in no event later than 60 days after the Policy expiration Date.

("Modified Notice Condition")

85.     The CCIC Policies contain the following voluntary payment provision in the section entitled "VI. Defense, Cooperation and Settlements":

> **VI. DEFENSE, COOPERATION AND SETTLEMENTS**
> A.   An **Insured** shall not admit liability for, enter into any settlement agreement, stipulate to any judgment, or incur **Costs of Defense** without the **Insurer's** prior written consent. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision regarding such consent. Any **Loss** incurred and settlements agreed to prior to the **Insurer** giving its consent shall not be covered hereunder.

("Voluntary Payment Provision")

86.     The following are definitions of terms that appear in the CCIC Policies:

> **III. DEFINITIONS**
> Whenever printed in boldface type in this Policy, the following terms shall have the meanings indicated below.
> A.   **"Claim"** means:
> 1.  a written demand for monetary or non-monetary relief, or
> 2.  a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief which is commenced by:
>     a.  service of a complaint or similar pleading, or
>     b.  return of an indictment (in the case of a criminal proceeding), or

      c.     receipt or filing of a notice of charges, or

3.     any proceeding brought or initiated by a federal, state or local government agency.

The term "**Claim**" shall not include labor or grievance arbitration subject to a collective bargaining agreement with respect to Coverage B. and Coverage C.

\* \* \*

C.     "**Costs of Defense**" means reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding salaries, wages, overhead or benefit expenses associated with any **Insured**, or any amount covered by the duty to defend obligation of any other insurer.

D.     "**Director(s) or Officer(s)**" means any past, present or future duly elected or appointed directors or officers of the **Insured Entity**. In the event that the **Insured Entity** operates outside the United States, then the term "**Director(s) or Officer(s)**" also means those titles, positions or capacities in such foreign **Insured Entity** which is equivalent to the position of a director or officer in a corporation incorporated within the United States. Coverage will automatically apply to all new **Directors or Officers** after the Policy inception date.

This Policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of deceased **Directors or Officers**, and the legal representatives of **Directors or Officers** in the event of incompetency, insolvency or bankruptcy, who were **Directors or Officers** at the time the **Wrongful Act** or **Wrongful Employment Act** upon which such **Claims** are based were committed.

This Policy shall cover **Loss** arising from a **Claim** made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual **Director or Officer** for a **Claim** arising solely out of his or her status as the spouse of an individual **Director or Officer**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the individual **Director or Officer** and the spouse, or property transferred from the individual **Director or Officer** to the spouse; provided, however, that this extension shall not afford coverage for any **Claim** for any **Wrongful Act** or **Wrongful Employment Act** of the spouse, but shall apply only to **Claims** arising out of any **Wrongful Acts** or **Wrongful Employment Acts** of an individual **Director or Officer**.

E.     "**Employee**" means an individual whose labor or service is engaged by and directed by an **Insured Entity**, including part-time, seasonal and temporary individuals. Independent contractors are not **Employees**. An individual's employment status shall be determined as of the date of the **Wrongful Employment Act**.

F.     "**Insured(s)**" means:

1.     with respect to Coverage A., any **Director or Officer**;

2.     with respect to Coverage B., an **Insured Entity**;

3.     with respect to Coverage C.,

     a.     any **Director or Officer** or **Employee** of an **Insured Entity**;

     b.     an **Insured Entity**.

G.     "**Insured Entity**" means the **Named Insured** and any **Subsidiary**.

\* \* \*

I.     "**Loss**" means damages, judgments, settlements, pre-judgment interest and post-judgment interest and **Costs of Defense**; provided, however, **Loss** shall not include:

1.     taxes (provided, however, that the **Insurer** will reimburse an **Insured Entity** for any employer share of payroll taxes on any portion of damages or settlements which constitute backpay otherwise considered a **Loss**), civil or criminal fines, or penalties imposed by law, or

2.     payment of insurance, disability, pension, health or other plan benefits claimed by or on behalf of any former or current **Employee**, or

3.     costs incurred by any **Insured** to make any building or property more accessible or accommodating to any disabled person, or

4.    amounts owed under federal, state or local wage and hour laws (provided, however, **Loss** shall include amounts owed under the Equal Pay Act of 1963), or

5.    commissions, bonuses, profit sharing or severance payment, or

6.    future wages or benefits of a reinstated **Employee** or wages or benefits associated with the continued employment of an **Employee**, or

7.    payment by the **Insured Entity** of allegedly inadequate price or consideration for the purchase of its own securities or the securities of a **Subsidiary**, or

8.    any matter deemed uninsurable under the law pursuant to which this Policy shall be construed.

\* \* \*

J.    "**Named Insured**" means the corporation designated in Item 1. of the Declarations.

\* \* \*

L.    "**Policy Period**" means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy; however, to the extent that coverage under this Policy replaces coverage in other policies terminating at noon standard time on the inception date of such coverage hereunder, then such coverage as is provided by this Policy shall not become effective until such other coverage has terminated.

\* \* \*

N.    "**Related Wrongful Acts**" means **Wrongful Acts** or **Wrongful Employment Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

\* \* \*

P.    "**Wrongful Act**" means:

1.    with respect to individual **Directors or Officers**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Directors or Officers** of an **Insured Entity** in their respective capacities as such, or any matter claimed against them by reason of their status as **Directors or Officers** of an **Insured Entity**, or any matter claimed against them arising out of their serving as a director, officer, trustee or governor of an **Outside Entity** in such capacities, but only if such service is at the specific request or direction of the **Insured Entity**,

2.    with respect to an **Insured Entity**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Insured Entity**.

Q.    "**Wrongful Employment Act**" means any actual or alleged act by an **Insured** arising from an actual or potential employment relationship with the claimant for:

1.    discrimination or harassment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, or any other basis prohibited by law which results in termination of the employment relationship, or demotion or failure or refusal to hire or promote, or failure to accommodate an **Employee** or potential **Employee**, or denial of an employment privilege, or the taking of any adverse or differential employment action, or

2.    sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance, or

3.    termination, constructive discharge, wrongful failure to hire, wrongful demotion, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of an implied contract or agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief–No Duty to Defend Barton Action I)

87.    CCIC refers to the foregoing paragraphs 1 through 86, and

1   incorporates the same herein by this reference.

2        88.   An actual controversy has arisen and now exists between CCIC and

3   RIL, and those persons and entities who qualify as insureds under the 2004 Policy

4   and/or the 2005 Policy ("RIL Parties"), in that CCIC contends, and is informed and

5   believes, that the RIL Parties deny, that no potential coverage exists under the

6   CCIC Policies for the claims in Barton Action I because the Demand Letters

7   constituted a claim under the 2004 Policy that was not reported to CCIC within 90

8   days as a condition precedent to coverage, and that pursuant to the Related Claims

9   Provision of the CCIC Policies, the claims in Barton Action I involve related

10  wrongful acts with respect to the claims that are the subject of the Demand Letters

11  so as to be deemed a single claim ("Single Claim") first made at the time that RIL

12  first received notice of the Demand Letters.

13       89.   Because the Single Claim was first made during the policy period of

14  the 2004 Policy, but not timely reported within 90 days, no potential or actual

15  coverage exists under that policy nor under the 2005 Policy because the Single

16  Claim was not first made during the policy period of that policy as required by the

17  insuring agreement of the ML Form.

18       90.   CCIC seeks, and is entitled to obtain, a judicial declaration that no

19  potential or actual coverage exists under the CCIC Policies for any of the claims in

20  Barton Action I because of the failure of RIL to have timely reported the Single

21  Claim to CCIC within 90 days of RIL's first receipt of that claim such that CCIC

22  has never had any duty to defend Barton Action I or indemnify any claims relating

23  to that action.

24

25                      **SECOND CLAIM FOR RELIEF**

26             (Declaratory Relief–No Duty to Defend Barton Action II)

27       91.   CCIC refers to the foregoing paragraphs 1 through 90, and

28  incorporates the same herein by this reference.

92.     An actual controversy has arisen and now exists between CCIC and RIL, in that CCIC contends, and is informed and believes, that RIL denies, that no potential coverage exists under the CCIC Policies for the claims in Barton Action II because the Demand Letters constituted a claim under the 2004 Policy that was not reported to CCIC within 90 days as a condition precedent to coverage, and that pursuant to the Related Claims Provision of the CCIC Policies, the claims in Barton Action II involve related wrongful acts with respect to the claims that are the subject of the Demand Letters so as to be deemed a Single Claim first made at the time that RIL first received notice of the Demand Letters.

93.     Because the Single Claim was first made during the policy period of the 2004 Policy but not timely reported within 90 days, no potential or actual coverage exists under that policy nor under the 2005 Policy because the Single Claim was not first made during the policy period of that policy as required by the insuring agreement of the ML Form.

94.     CCIC seeks, and is entitled to obtain, a judicial declaration that no potential or actual coverage exists under the CCIC Policies for any of the claims in Barton Action II because of the failure of RIL to have timely reported the Single Claim to CCIC within 90 days of RIL's first receipt of that claim such that CCIC has never had any duty to defend Barton Action II or indemnify any claims relating to that action.

## THIRD CLAIM FOR RELIEF

(Declaratory Relief–No Duty to Defend Barton Action II)

95.     CCIC refers to the foregoing paragraphs 1 through 94, and incorporates the same herein by this reference.

96.     In the alternative to the second claim for relief, an actual controversy has arisen and now exists between CCIC and the RIL Parties, in that CCIC contends, and is informed and believes, that the RIL Parties deny, that no potential

1  coverage exists under the CCIC Policies for the claims in Barton Action II because

2  that suit was not timely reported to CCIC within 15 days of when RIL was served

3  with the original complaint in that action, a condition precedent to coverage under

4  the 2005 Policy pursuant to the Modified Notice Condition of the 2005 Policy, and

5  that RIL self defended that action for more than 3 months before reporting that suit

6  to CCIC.

7        97.    CCIC seeks, and is entitled to obtain, a judicial declaration that no

8  potential or actual coverage exists under the CCIC Policies for any of the claims in

9  Barton Action II because that suit was not timely reported to CCIC within 15 days

10 of when RIL was served with the original complaint in that action, a condition

11 precedent to coverage under the 2005 Policy pursuant to the Modified Notice

12 Condition of the 2005 Policy such that CCIC has never had any duty to defend

13 Barton Action II or indemnify any claims relating to that action.

14

15                          **FOURTH CLAIM FOR RELIEF**

16              (Declaratory Relief–No Duty to Defend Barton Action III)

17        98.    CCIC refers to the foregoing paragraphs 1 through 97, and

18 incorporates the same herein by this reference.

19        99.    An actual controversy has arisen and now exists between CCIC and

20 the RIL Parties, in that CCIC contends, and is informed and believes, that the RIL

21 Parties deny, that no potential coverage exists under the CCIC Policies for the

22 claims in Barton Action III because the Demand Letters constituted a claim under

23 the 2004 Policy that was not timely reported to CCIC within 90 days as a condition

24 precedent to coverage, and that pursuant to the Related Claims Provision of the

25 CCIC Policies, the claims in Barton Action III involve related wrongful acts with

26 respect to the claims that are the subject of the Demand Letters so as to be deemed a

27 Single Claim first made at the time that RIL first received notice of the Demand

28 Letters.

Complaint for Declaratory Relief and Reimbursement of Defense Payments

100.   Because the Single Claim was first made during the policy period of the 2004 Policy but not timely reported within 90 days, no potential or actual coverage exists under that policy nor under the 2005 Policy because the Single Claim was not first made during the policy period of that policy as required by the insuring agreement of the ML Form.

101.   CCIC seeks, and is entitled to obtain, a judicial declaration that no potential or actual coverage exists under the CCIC Policies for any of the claims in Barton Action III because of the failure of RIL to have timely reported the Single Claim to CCIC within 90 days of RIL's first receipt of that claim such that CCIC has never had any duty to defend Barton Action III or indemnify any claims relating to that action.

## **FIFTH CLAIM FOR RELIEF**

(Reimbursement of Defense Payments Incurred in Barton Action I)

102.   CCIC refers to the foregoing paragraphs 1 through 101, and incorporates the same herein by this reference.

103.   An actual controversy has arisen, and now exists, between CCIC and the RIL Parties in that CCIC contends, and is informed and believes that the RIL Parties deny, that if it is determined pursuant to CCIC's first claim for declaratory relief herein that no potential coverage exists under the CCIC Policies for the claims in Barton Action I, that CCIC has no obligation to pay for or reimburse any amounts incurred in connection with Barton Action I, and that CCIC is entitled to recover from the RIL Parties, the attorney fees and costs and other expenses incurred by CCIC pursuant to the 2005 Policy for the defense of the claims asserted in Barton Action I.

104.   CCIC seeks a declaration that if it is determined that no potential insurance coverage exists under the CCIC Policies for Barton Action I, that CCIC is not obligated to pay for or reimburse any expenditures for the defense of the claims

1    asserted in Barton Action I, including but not limited to, legal fees, costs and other

2    expenses, and that CCIC is entitled to recover from the RIL Parties any legal fees,

3    costs and other expenses incurred by CCIC pursuant to the 2005 Policy with respect

4    to the defense of the claims asserted in Barton Action I.

5

6                        **SIXTH CLAIM FOR RELIEF**

7          (Reimbursement of Defense Payments Incurred in Barton Action II)

8          105.   CCIC refers to the foregoing paragraphs 1 through 104, and

9    incorporates the same herein by this reference.

10         106.   An actual controversy has arisen, and now exists, between CCIC and

11   RIL in that CCIC contends, and is informed and believes that RIL denies, that if it

12   is determined pursuant to CCIC's second and/or third claim for declaratory relief

13   herein that no potential coverage exists under the CCIC Policies for the claims in

14   Barton Action II, that CCIC has no obligation to pay for or reimburse any amounts

15   incurred in connection with Barton Action II, and that CCIC is entitled to recover

16   from RIL, any attorney fees and costs and other expenses incurred by CCIC

17   pursuant to the 2005 Policy for the defense of the claims asserted in Barton Action

18   II.

19         107.   CCIC seeks a declaration that if it is determined that no potential

20   insurance coverage exists under the CCIC Policies for Barton Action II, that CCIC

21   is not obligated to pay for or reimburse any expenditures for the defense of the

22   claims asserted in Barton Action II, including but not limited to, legal fees, costs

23   and other expenses, and that CCIC is entitled to recover from the RIL Parties the

24   legal fees, costs and other expenses incurred by CCIC pursuant to the 2005 Policy

25   with respect to the defense of the claims asserted in Barton Action II.

26

27

28

               Complaint for Declaratory Relief and Reimbursement of Defense Payments

## SEVENTH CLAIM FOR RELIEF

(Reimbursement of Defense Payments Incurred in Barton Action III)

108.   CCIC refers to the foregoing paragraphs 1 through 107, and incorporates the same herein by this reference.

109.   An actual controversy has arisen, and now exists, between CCIC and the RIL Parties in that CCIC contends, and is informed and believes that the RIL Parties deny, that if it determined pursuant to CCIC's fourth claim for declaratory relief herein that no potential coverage exists under the CCIC Policies for the claims in Barton Action III, that CCIC has no obligation to pay for or reimburse any amounts incurred in connection with Barton Action III, and that CCIC is entitled to recover from the RIL Parties, any attorney fees and costs and other expenses incurred by CCIC pursuant to the 2005 Policy for the defense of the claims asserted in Barton Action III.

110.   CCIC seeks a declaration that if it is determined that no potential insurance coverage exists under the CCIC Policies for Barton Action III, that CCIC is not obligated to pay for or reimburse any expenditures for the defense of the claims asserted in Barton Action III, including but not limited to, legal fees, costs and other expenses, and that CCIC is entitled to recover from the RIL Parties any legal fees, costs and other expenses incurred by CCIC pursuant to the 2005 Policy with respect to the defense of the claims asserted in Barton Action III.

## EIGHTH CLAIM FOR RELIEF

(Declaratory Relief–No Duty to Indemnify Settlement Payment in Consolidated Actions)

111.   CCIC refers to the foregoing paragraphs 1 through 110, and incorporates the same herein by this reference.

112.   An actual controversy has arisen, and now exists, between CCIC and the RIL Parties in that CCIC contends, in the alternative to its first, second and third

claims for declaratory relief, and is informed and believes that the RIL Parties deny, that no indemnity coverage exists under the CCIC Policies for the Settlement Payment in the Consolidated Actions because the Barton Share Claims had been dismissed in their entirety prior to that settlement (and come within the scope of the Contract and/or Insured Exclusions), and the Wage Claims do not constitute covered "Loss" because they involve amounts owed under federal, state or local wage and hour laws, and/or the Wage Claims come within the scope of the Wage and Hour Exclusion endorsement and/or the Contract Exclusion of the CCIC Policies and/or the Settlement Payment constitutes a voluntary payment under the Voluntary Payment Provision such that CCIC has no duty to pay for or reimburse any portion of the Settlement Payment.

113.   CCIC seeks a declaration that CCIC is not obligated to pay for or reimburse any portion of the Settlement Payment because no indemnity coverage exists for that payment under the CCIC Policies.

WHEREFORE, CCIC prays for judgment as follows:

1.   For a declaration that no potential or actual coverage exists under the CCIC Policies for the claims in the Barton Actions;

2.   For a declaration that CCIC has no obligation to defend, indemnify, pay or reimburse any person or entity pursuant to the CCIC Policies with respect to any amount incurred relating to the Barton Actions, including but not limited to, legal fees and costs and expenses and the Settlement Payment;

3.   For an order that CCIC has no obligation to defend, indemnify, pay or reimburse any person or entity pursuant to the CCIC Policies with

1    respect to any amount incurred relating to the Barton Actions,

2    including but not limited to, legal fees and costs and expenses and the

3    Settlement Payment;

4

5    4.    For an order that CCIC is entitled to reimbursement from the RIL

6    Parties the amount incurred by CCIC pursuant to the 2005 Policy for

7    attorney fees and costs and other expenses ("Reimbursement

8    Amounts") relating to the defense of the Barton Actions;

9

10   5.    For pre-judgment and post-judgment interest on any amounts that

11   CCIC is entitled to recover from the RIL Parties with respect to the

12   Reimbursement Amounts; and

13

14   6.    For such other and further relief as the Court deems appropriate.

15

16   DATED:  August 16, 2010          CHARLSTON, REVICH & WOLLITZ LLP
                                      ROBERT D. HOFFMAN
17

18

19                                   By: _Robert D. _____

20                                        Robert D. Hoffman
                                     Attorneys for Plaintiff,
21                                   Carolina Casualty Insurance Company

22

23

24

25

26

27

28

# EXHIBIT "A"

# LAW OFFICES OF PATRICK C. McGARRIGLE

### A PROFESSIONAL LAW CORPORATION
#### 1100 GLENDON AVENUE, SUITE 2150
#### LOS ANGELES, CALIFORNIA 90024
#### TELEPHONE (310) 208-3300   FAX (310) 208-3309
#### E-MAIL: thefirm@mcgarriglelaw.com

OUR FILE NUMBER:

## *VIA TELECOPIER 310-342-0099 AND CERTIFIED MAIL/RETURN RECEIPT*

September 20, 2004

Mr. Zafar Khan & Dr. Terrance Tomkow
RPost US, Inc / RPost International Limited / RPost, Inc. / RPost Holdings, Inc.
6033 West Century Blvd, Suite 1278
Los Angeles, CA 90045

Re: **Mr. Kenneth Barton**

Gentlemen:

This Firm is counsel to Mr. Kenneth Barton. This letter serves to advise you that
Mr. Barton considers himself to be wrongfully terminated by the management of
RPost, specifically by Mr. Zafar Khan and Dr. Terrance Tomkow.

RPost management has refused to pay Mr. Barton the compensation detailed in
Mr. Barton's employment agreement, and further; RPost management has
hindered Mr. Barton's ability to perform certain obligations as an officer of the
Company

Mr. Barton acknowledges that he has received partial compensation checks
totaling $8,000 over a three-month period. Mr. Barton has accepted these checks
as partial payment of his $8,000 per month salary detailed in his employment
agreement. It should be noted that this agreement was submitted to and approved
by Symantec Corporation during their due diligence process which they conducted
prior to investing in RPost. As an RPost shareholder and Board member, Mr.
Barton accepted certain encumbrances by agreeing to the Symantec investment

(specifically he waived certain shareholder rights and stepped down from the RPost Board). Mr. Barton signed the Symantec investment documents based on the provisions of his RPost employment agreement, importantly, the agreed upon salary of $8,000 per month. Further, Mr. Barton received assurances from RPost management that they would abide by the agreement.

Certain underlining issues with respect to this matter should also be pointed out:

1.  As an executive of RPost one of Mr. Barton's responsibilities has been to review the RPost accounting and check registry. Attached are 11 requests for this information. For the past three years, with one primary exception, these requests have been repeatedly ignored or denied. At one point, when Mr. Barton asked the RPost bookkeeper (Ms. Eboni Williams ) for these company records, he was informed that she had been instructed not to provide these documents unless they were first reviewed by Mr. Zafar Khan to determine which documents were to be given to Mr. Barton. This has been a clear and deliberate attempt to hinder Mr. Barton's ability to meet his obligation as an officer of RPost and safeguard the assets of the shareholders.

    It should be noted that the one time in the past year that Mr. Barton did receive a copy of several months of the check registry, it was because of his refusal to sign off on the Symantec investment documents unless given an opportunity to review the registry.

2.  RPost has an assurance of supply agreement with AT&T whereby RPost is to escrow source code and instructions on setting up and implementing RPost service in the event RPost ceases to be able to perform the Registered e-Mail services being provided under the AT&T reseller agreement. Despite numerous attempts by Mr. Barton to address this matter at management meetings, it has always been tabled. It is further Mr. Barton's understanding that documentation of the system and code is maintained privately by Dr. Tomkow, or not at all. This will be a major problem should something happen to Dr. Tomkow. In the interest of RPost shareholders, this situation should be corrected immediately.

3.  The approval of company expenses has been a long-term issue. Dr. Tomkow and Mr. Barton have always submitted expenses to another company executive for approval. However, Mr. Khan, despite numerous requests, has refused to submit expenses billed to his credit cards to another company executive for approval. These expenses have been and continue to be paid by RPost with only the accountability that Mr. Khan deems them

appropriate and proper. Again this behavior has hindered Mr. Barton's ability to accomplish his obligation as an officer of RPost to safeguard the assets of the shareholders.

It should also be noted that, in Mr. Barton's situation, he has still not been fully reimbursed for expenses submitted and approved over the past four years.

4.   An additional issue is the failure of Mr. Khan to inform management and the RPost Board of major opportunities. Mr. Khan was presented with an offer of a $2 million investment from Propat, Inc. and did not notify Mr. Barton or Dr. Tomkow of this opportunity until after the offer was rescinded.

5.   Further, please allow this letter to confirm that, effective immediately, Mr. Barton hereby resigns as an officer of each of the following entities: RPost International Ltd., a Bermuda Corp., RPost Holdings, Inc., a Delaware Corp., and RPost U.S., Inc., a Delaware Corporation and RPost, Inc., a Nevada Corporation (aka AMS, Inc.).

Mr. Barton further wishes to inform RPost management that his signing of the documents in the Symantec investment agreement is considered to be void due to misrepresentations made by Mr. Zafar Khan.

Please send Mr. Barton his share certificates and his additional equity documentation, by no later than September 23, 2004, to: Kenneth Barton 171 Pier Avenue, #350, Santa Monica, CA 90045

Additionally, please send all future correspondence to this address. Please cease to send information via email to kbarton@rpost.com. Mr. Barton has mailed his office key and other appropriate items to the RPost Los Angeles office.

All of Mr. Barton's rights and remedies are expressly reserved.

Very truly yours,

Patrick C. McGarrigle of
LAW OFFICES OF PATRICK C. MCGARRIGLE, APC
Enclosures
8681-001\ltr\rpost.001

EXHIBIT A

00032

# EXHIBIT "B"

# LAW OFFICES OF PATRICK C. McGARRIGLE

### A PROFESSIONAL LAW CORPORATION
1100 GLENDON AVENUE, SUITE 2150
LOS ANGELES, CALIFORNIA 90024
TELEPHONE (310) 208-3300 FAX (310) 208-3309
E-MAIL: thefirm@mcgarriglelaw.com

OUR FILE NUMBER:

8681-001

October 29, 2004

***VIA TELECOPIER***
***AND CERTIFIED MAIL/RETURN RECEIPT***

Mr. Zafar Khan
Dr. Terrance Tomkow
RPost US, Inc./RPost International Limited/
  RPost, Inc./RPost Holdings, Inc.
6033 West Century Boulevard, Suite 1278
Los Angeles, California 90045

     Re: <u>Mr. Kenneth Barton</u>

Gentlemen:

     On September 20, 2004, we wrote to you on behalf of Mr. Kenneth Barton requesting certain information and documentation including, without limitation, a response regarding unpaid compensation and unreimbursed employee expenses. We also requested that Mr. Barton's stock be delivered without further delay.

     Despite this good faith effort (among other direct efforts by Mr. Barton) and more than sufficient time within which to comply, we have not received from you the courtesy of a reply or any of the requested information and documentation.

     Please be advised that, <u>if you fail to supply information and documentation called for under our prior correspondence by the close of business on November 5, 2004</u>, our client will be compelled to proceed with appropriate legal action to enforce and protect his rights.

     All of Mr. Barton's rights and remedies are expressly reserved.

Very truly yours,

Patrick C. McGarrigle of
LAW OFFICES OF PATRICK C. McGARRIGLE, APC

EXHIBIT B

00033

# EXHIBIT "C"

# LAW OFFICES OF PATRICK C. MCGARRIGLE
### A PROFESSIONAL LAW CORPORATION
1100 GLENDON AVENUE, SUITE 2150
LOS ANGELES, CALIFORNIA 90024
TELEPHONE (310) 208-3300 FAX (310) 208-3309
E-MAIL: thefirm@mcgarriglelaw.com

OUR FILE NUMBER:

8681-001

November 18, 2004

## *VIA U.S. MAIL AND E-MAIL*

Mr. Richard Pryor
c/o RPost
6033 West Century Boulevard, Suite 1278
Los Angeles, California 90045

Mr. Ellie Roston
Fulwider Patton Lee and Utecht, LLP
Howard Hughes Center
6060 Center Drive, 10th Floor
Los Angeles, California 90045

Mr. Henri Isenberg
Symantec Corporation
2500 Broadway, Suite 299
Santa Monica, California 90404

Mr. Zafar Khan
c/o RPost
6033 West Century Boulevard, Suite 1278
Los Angeles, California 90045

Dr. Terrance Tomkow
c/o RPost
6033 West Century Boulevard, Suite 1278
Los Angeles, California 90045

### Re: Mr. Kenneth Barton

Dear Sirs:

This Firm is counsel to Mr. Kenneth Barton.

We have written two letters to Messrs. Khan and Tomkow concerning myriad matters of importance to both Mr. Barton and, frankly, RPost. Complete copies of the correspondence are enclosed herewith for your review and immediate reply.

EXHIBIT C

Mr. Richard Pryor
  c/o Rpost
Mr. Ellie Roston
  Fulwider Patton Lee and Utecht, LLP
Mr. Henri Isenberg
  Symantec Corporation
Mr. Zafar Khan
  c/o RPost
Dr. Terrance Tomkow
  c/o RPost US, Inc.
November 18, 2004
Page 2


     As the absence of any response, substantive or otherwise, certainly constitutes sufficient grounds - given the gravity of the matters at issue - for our client to have already commenced legal action, Mr. Barton has elected to notify the Board of this matter and extends his requests to the Board that the matters referenced in the attached correspondence be addressed and resolved without any further delays.

     You are urged to take these matters quite seriously. We are prepared to proceed with legal action against the Company and all responsible parties without delay if a suitable resolution of all outstanding matters is not promptly achieved.

     We request your written reply to this letter and the inquiries, etc. set forth in the enclosed correspondence by the close of business on November 29, 2004. If same has not been received, legal action will be commenced without further notice.

     All of Mr. Barton's rights and remedies are expressly reserved.

Very truly yours,


Patrick C. McGarrigle of
LAW OFFICES OF PATRICK C. MCGARRIGLE, APC
Enclosures
8681-001\ltr\Directors.001

EXHIBIT C

EXHIBIT "D"

# Carolina Casualty Insurance Company

8381 Dix Ellis Trail, Jacksonville, FL 32256

**Declarations Page**

## Management Liability Insurance

### CLAIMS MADE WARNING FOR DECLARATIONS

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" (AS DEFINED IN THE POLICY) FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS "COSTS OF DEFENSE" (AS DEFINED IN THE POLICY) AND "COSTS OF DEFENSE" SHALL BE APPLIED TO THE DEDUCTIBLE.

PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in the Policy.

Policy Form:   ML 26000 (10-98)                                              Policy Number: 6618817 / 2

Item 1.    Name and Address of **Named Insured**:

RPost International Limited
Suite 1278
8033 West Century Boulevard
Los Angeles, CA 90045

Person designated to receive all correspondence from the **Insurer**:

Zafar Khan
Chief Executive Officer

Item 2.    **Policy Period:**    From June 13, 2004 (inception date) to June 13, 2005 (expiration date)
                                 (Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured**)

Item 3.    Aggregate Limit of Liability for the **Policy Period** (inclusive of **Costs of Defense**): $1,000,000

Item 4.    Applicable Deductibles:

| | |
|---|---|
| Coverage A. 1. | $0 |
| Coverage A. 2. | $25,000 |
| Coverage B. | $25,000 |
| Coverage C. | $25,000 |

Item 5.    Premium: $7,075

Item 6.    **Continuity Dates:**

| | | |
|---|---|---|
| A. | Coverages A. | June 13, 2003 |
| B. | Coverage B. | June 13, 2003 |
| C. | **Outside Entity Coverage:** | June 13, 2003 |
| | Per **Outside Entity** (see endorsement) | |
| D. | Coverage C. | June 13, 2003 |

ML 26001 (10-98)

EXHIBIT D

00036

## Carolina Casualty Insurance Company

Item 7.    Endorsements attached:

| | | |
|---|---|---|
| 264191 | Addition to Section IV. Wage and Hour Laws Exclusion | |
| 264310 | Addition to Section IV. Past Acts Exclusion | |
| 264319 | Addition to Section IV. Known Wrongful Act Exclusion, Specific Coverage | |
| 264357 | Addition to Section IV. Professional Services Exclusion | |
| 264401 | Addition to Section IV. Copyright Patent Infringement Exclusion | |
| 264900 | Addition to Section IV. Certified Acts of Terrorism Exclusion | |

Item 8.    Notice to the Insurer as provided in sections VII. A. and VII. B. and any information furnished to the Insurer as provided in sections VI. C. and VII. D. shall be addressed to: Monitor Liability Managers, Inc., Claims Department, 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008-4039.

All other notices required to be given to the Insurer under this Policy shall be addressed to: Monitor Liability Managers, Inc., 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008-4039.

These Declarations along with the completed and signed Proposal Form and the Management Liability Insurance Policy, shall constitute the contract between the Insureds and the Insurer.

Authorized Representative: _____    Date Issued: August 6, 2004

## Carolina Casualty Insurance Company
8381 Dix Ellis Trail, Jacksonville, FL 32256

### Addition to Section IV.
### Wage and Hour Laws Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged amounts owed under federal, state or local wage and hour laws, including, without limitation, the Fair Labor Standards Act; provided, however, this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment of the claimant by the Insured on account of the claimant's exercise of rights pursuant to any such law or amounts owed under the Equal Pay Act of 1963.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| RPost International Limited | 6618817/2 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/13/2004 | |

ML 26000 (10-98)          13944-618817-315036          264191 (02-02)

# Carolina Casualty Insurance Company
8381 Dix Ellis Trail, Jacksonville, FL 32256

Page 1 of 1

### Addition to Section IV.
### Past Acts Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.  any **Wrongful Act** or **Wrongful Employment Act** which occurred on or before June 13, 2003, or

2.  any **Wrongful Act** or **Wrongful Employment Act** occurring on or subsequent to June 13, 2003 which, together with a **Wrongful Act** or **Wrongful Employment Act** occurring prior to such date, would constitute a **Related Wrongful Act.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | |
|---|---|
| RPost International Limited | Policy Number<br>6618817/2 |
| Effective Date of This Endorsement<br>06/13/2004 | Authorized Representative |
| ML 26000 (10-98) | |

8445-618817-315036

264310 (10-98)

## Carolina Casualty Insurance Company
8381 Dix Ellis Trail, Jacksonville, FL 32256

Page 1 of 1

---

### Addition to Section IV.
### Known Wrongful Act Exclusion Specific Coverage

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act or Wrongful Employment Act** which occurred on or before June 13, 2003 if any of the **Insureds**, as of such date, knew or reasonably could have foreseen that such **Wrongful Act or Wrongful Employment Act** could lead to a **Claim**, solely with respect to the coverage provided under Coverage C of the Policy.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | | |
|---|---|---|
| RPost International Limited | Policy Number | |
| | 6618817/2 | |
| Effective Date of This Endorsement | Authorized Representative | |
| 06/13/2004 | | |
| ML 26000 (10-98) | | 264319 (10-98) |

8451-618817-315036

00040

# Carolina Casualty Insurance Company

8381 Dix Ellis Trail, Jacksonville, FL 32256

Page 1 of 1

## Addition to Section IV.
## Professional Services Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:   based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the performance of any **professional services** for others for a fee, and caused by any act, error or omission; provided, however, this exclusion does not apply to any **Claim** against an **Insured** to the extent that such **Claim** is for a **Wrongful Act** or **Wrongful Employment Act** by such **Insured** in connection with the management or supervision of any division, **Subsidiary** or group of the **Insured Entity** offering any of the aforementioned services.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| RPost International Limited | 6618817/2 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/13/2004 | |
| ML 26000 (10-98) | 264357 (10-98) |

8462-618817-315036

EXHIBIT D

00041

**Carolina Casualty Insurance Company**
8381 Dix Ellis Trail, Jacksonville, FL 32256

Page 1 of 1

## Addition to Section IV.
## Copyright / Patent Infringement Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that:

1.     With respect to Coverage B. and C. only, section IV. Exclusions of this Policy is amended by the addition of the following:

        IV.:     based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged:

            1.     plagiarism, or

            2.     infringement of copyright, patent, title or slogan, or

            3.     piracy or unfair competition, or

            4.     idea misappropriation, or

            5.     any other intellectual property rights.

2.     Solely for purposes of the coverage provided by this endorsement, section VI. Defense, Cooperation and Settlements of this Policy is amended by the addition of the following

        VI.:     With respect to Costs of Defense jointly incurred by, any joint settlement made by, and/or any adjudicated judgment of joint and several liability against the **Insured Entity** and any **Director** or **Officer**, in connection with any **Claim**, the **Insured Entity** and the **Director(s)** or **Officer(s)** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between the **Insured Entity** and the **Director(s)** or **Officer(s)** and the **Insurer**. In determining a fair and proper allocation, the **Directors and Officers** and the **Insured Entity** expressly acknowledge that the **Directors and Officers** and the **Insured Entity** each face independent exposure. In the event that a determination as to the amount of Costs of Defense to be advanced under this Policy cannot be agreed to, then the **Insurer** shall advance such **Costs of Defense** which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
| --- | --- |
| RPost International Limited | 6618817/2 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/13/2004 | |
| ML 26000 (10-98) | |

8471-618817-315036

264401 (10-98)

# Carolina Casualty Insurance Company

8381 Dix Ellis Trail, Jacksonville, FL 32256

Page 1 of 1

## Addition to Section IV.
## Certified Acts of Terrorism Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that:

1.    Section IV. Exclusions of this Policy is amended by the addition of the following:

   IV.:    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any injury or damage arising out of a Certified Act of Terrorism.

2.    Solely for the purposes of the provisions of this endorsement, section III. Definitions of this Policy is amended by the addition of the following:

   III.:    "Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

   The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a Certified Act of Terrorism.

   a.    The act resulted in aggregate losses in excess of $5 million; and

   b.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | | Policy Number |
|---|---|---|
| RPost International Limited | | 6618817/2 |
| Effective Date of This Endorsement | Authorized Representative | |
| 06/13/2004 | | |
| ML 26000 (10-98) | 9690-618817-315036 | 264900 (11-02) |